JEFFERSON PILOT FINANCIAL INSURANCE COMPANY F/K/A ALEXANDER HAMILTON LIFE INSURANCE COMPANY OF AMERICA F/K/A JEFFERSON-PILOT PENSION LIFE INSURANCE COMPANY, PLAINTIFF v. MARSH USA INC. F/K/A J&H MARSH & McLENNAN, INC., SUCCESSOR TO JOHNSON & HIGGINS CAROLINAS, INC., AND HARTFORD FIRE INSURANCE COMPANY, DEFENDANTS

No. COA02-1386
No. COA02-1484

(Filed 15 July 2003)

1. **Appeal and Error— preservation of issues—failure to object**

An issue was not preserved for appellate review where there was no objection.

2. **Contribution— agency—lack of direct negligence—claims extinguished**

A determination of agency was properly submitted to the jury to establish a contribution claim by an insurance broker (Marsh) against the company issuing a fidelity bond (Hartford).

3. **Contribution— prima facie showing—agency**

There was a prima facie showing of a contribution claim between an insurance broker (Marsh) and the company issuing a fidelity bond (Hartford). Marsh's receipt of commissions from Hartford and issuance of title binders and other documents on Hartford's behalf create an apparent authority for Marsh to

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

act as Hartford's agent and are sufficient to withstand Hartford's motion for summary judgment or directed verdict on the issue of agency.

4. **Contribution; Appeal and Error— amount of contribution mandated—verdict outside applicable law—no formal objection**

The trial court erred in a contribution case by entering judgment upon a jury's determination of the amount of contribution when that amount was mandated by the Uniform Contribution Among Tort-Feasors Act (UCATA). A failure to formally object to the instruction was not fatal because the verdict was not allowed under applicable law.

5. **Insurance— duty of insurer to monitor insured—instruction on general negligence**

An assignment of error to the trial court's failure to instruct a jury on the duty of an insurer to monitor the business of the insured was not addressed where the trial court submitted the issue of the insurer's negligence without an instruction on any specific duty and the jury found the insurer liable as the principal of a broker.

6. **Evidence— questions about irrelevant evidence—not prejudicial**

The allowance of questions of questionable relevancy did not rise to the level of prejudicial error in an action to determine the liability of an insurer through the actions of a broker.

7. **Insurance— fidelity bond—extension of coverage by company expansion—notice and consent required**

The trial court did not err by granting summary judgment for an insurer on contract and declaratory judgment claims arising from the fidelity bonds issued to cover insurance agents at a company which expanded the number of agents.

Appeals by defendants from orders and judgments entered 19 January 2000 by Judge Catherine C. Eagles, 17 October 2001 by Judge James M. Webb, and 21 December 2001 and 3 July 2002 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 5 June 2003.

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

*Kennedy Covington Lobdell & Hickman, LLP, by Raymond E. Owens, Jr., Russell F. Sizemore and Susan Ballantine Molony, for defendant Marsh USA.*

*Faison & Gillespie, by O. William Faison, Michael R. Ortiz and John-Paul Schick, for defendant Hartford Fire Insurance Company.*

TYSON, Judge.

## I. Background

Hartford Fire Insurance Company ("Hartford") provided Jefferson Pilot Financial Insurance Company ("JP") with fidelity bond coverage. Hartford issued a Form 25 Financial Institution Bond that covered wrongful acts of JP's insurance agents for three years, between 27 March 1992 and 27 March 1995. In September 1994, Martin Pallazza ("Pallazza"), Hartford's bond underwriter in charge of the JP account, reviewed JP's 1993 Annual Report and discovered JP had added over 3,000 new agents to its network and planned for further additions. Pallazza questioned, in a notation on the annual report, whether agent growth affected Hartford's coverage to JP. Traska testified that Pallazza should have inquired to clarify how the information affected Hartford's risk. Pallazza testified that he spoke with Barbara Haney of Marsh USA, Inc. ("Marsh"), the insurance broker for JP, on 27 September 1994. No resolution was reached concerning the coverage for the additional agents mentioned in JP's Annual Report. Pallazza resigned from Hartford in 1994 and Patrick Cummings became the new underwriter for the account. No additional inquiries were made to JP or Marsh about the increase in agents.

In January 1995, Hartford contacted Marsh about renewing the bond. Marsh, an independent agent of Hartford, issued binders for Hartford and received a percentage of the collected premium and a contingent commission. Hartford requested Marsh to obtain pertinent information for the renewal from JP. Marsh informed Hartford that most of the information requested was inaccessible at the time due to internal restructuring. Hartford extended the period of the bond's coverage. Hartford agreed to renew the bond effective 27 March 1995 after Marsh allegedly represented to Hartford that the number of JP insurance agents had not materially changed. Contrary to this alleged representation, the number of JP agents had substantially increased during the term of the original bond.

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

On 6 October 1995, a subsidiary of JP purchased and merged with Alexander Hamilton Life Insurance Company of America for $575 million. After this merger, the number of JP's insurance agents increased by 6,000. Neither JP nor Marsh informed Hartford of the merger prior to its consummation. On 16 April 1996, Marsh notified Hartford of the merger and acknowledged that JP was unaware the additional agents were not covered. Marsh began to provide Hartford with the additional documentation previously requested.

On 6 June 1996, Marsh informed Hartford that it had recently learned that Roger McCall ("McCall"), an Alexander Hamilton insurance agent, had embezzled a significant amount of funds. In August 1996, JP made an initial claim under the bond for approximately $1,000,000 but specifically outlined only $850,000 in losses it allegedly incurred as a result of McCall's malfeasance. Hartford denied the claim on the basis that fidelity coverage to Alexander Hamilton's agents was never provided. JP filed suit against Marsh and Hartford via an amended complaint on 26 August 1998 for (1) breach of contract, (2) declaratory judgment, (3) negligence by Marsh and liability therefor of Marsh and Hartford under a principal/agent theory, and (4) breach of contract by Marsh and liability therefor under a principal/agent theory. Hartford cross-claimed against Marsh for indemnity and contribution. Marsh moved to amend its answer on 19 November 1999 to cross-claim against Hartford for indemnity and contribution. On 6 December 1999, JP moved for summary judgment on its breach of contract and declaratory judgment causes of action, and for judgment of Hartford's derivative liability under JP's third and fourth causes of action. Marsh moved for partial summary judgment on 7 December 1999. On 8 December 1999, Hartford moved for summary judgment on all of JP's claims.

Judge Catherine C. Eagles heard the motions and issued an order on 19 January 2000 that: (1) denied JP's motion for summary judgment, (2) granted Hartford's motion for summary judgment as to JP's first and second causes of action but denied the motion with respect to JP's agency claims against Hartford in the third and fourth causes of action, (3) denied Marsh's motion for partial summary judgment and granted Marsh's motion for leave to amend its answer. JP appealed the denial of its summary judgment motion, and this Court dismissed JP's appeal as interlocutory. *Alexander Hamilton Life Ins. Co. of Am. v. J&H Marsh & McClennan, Inc.*, 142 N.C. App. 699, 543 S.E.2d 898 (2001).

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

On 10 September 2001, Hartford moved for summary judgment on Marsh's cross-claims for indemnification and contribution and on JP's alternative third claim relating to the negligence of Marsh. Judge James Webb entered an order dated 17 October 2001 which granted Hartford's motion for summary judgment regarding Marsh's cross-claim for indemnification, denied Hartford's motion regarding Marsh's cross-claim for contribution, and denied Hartford's motion for summary judgment on JP's negligence claim.

On the eve of the trial, JP and Marsh settled. Neither JP nor Marsh released Hartford. Marsh paid JP $1,450,000 in exchange for JP's release of its claims against Marsh and assignment to Marsh of all of JP's claims against Hartford. Marsh dismissed with prejudice the negligence and breach of contract actions. On 27 November 2001, the trial court denied Hartford's motion to dismiss Marsh's contribution claim. Hartford attempted to assert its cross-claim for indemnity. The trial court in pre-trial motions informed Hartford that it could not pursue an indemnity claim but could allege it "as a defense, and an issue put to the jury to that effect." In the course of the trial, the trial court informed Hartford that its claim for indemnity had been extinguished.

A jury decided (1) whether Marsh was the agent of Hartford, (2) whether Hartford was negligent, (3) whether the settlement amount was reasonable, and (4) the amount, if any, Hartford should pay Marsh. The jury's verdict form was returned as follows:

1. Was Marsh the agent of Hartford at the time of the merger transaction between Jefferson-Pilot and Alexander Hamilton?

ANSWER: Yes

2. Did Hartford contribute by its negligence to the damage to Jefferson-Pilot/Alexander Hamilton/JP Alexander?

ANSWER: No

3. Was the amount paid by Marsh to Jefferson-Pilot for which it now seeks contribution from Hartford a reasonable amount to settle all of Jefferson-Pilot's claims?

ANSWER: Yes

4. What amount of damages, if any, should Hartford be required to pay for Marsh's settlement with Jefferson-Pilot?

ANSWER: $150,000.00

**JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.**

[159 N.C. App. 43 (2003)]

On 8 January 2002, final judgment was entered against Hartford in the amount of $150,000. Hartford appealed. Marsh filed and was denied a motion to alter or amend the judgment or in the alternative, for a judgment notwithstanding the verdict or new trial. On 7 February 2002, Marsh cross-appealed from the final judgment. On 11 June 2002, Marsh's post-trial motion was heard and denied by order filed 2 July 2002. Marsh appealed. All issues from both appeals have been consolidated per stipulation of counsel and order of this Court.

## II. Issues

The issues are (1) whether Hartford should have been allowed to prove its cross-claim of indemnity against Marsh, (2) whether the issue of agency was properly submitted to the jury, (3) whether Marsh failed to make a *prima facie* showing for contribution under N.C.G.S. § 1B-1, (4) whether the trial court erred by entering judgment on the jury's verdict regarding the amount of contribution after the jury found the settlement to be reasonable, (5) whether the trial court erred in refusing to instruct the jury on Hartford's negligence and erroneously finding Hartford was not negligent by failing to issue insurance coverage for JP, (6) whether the trial court erred in admitting evidence of Marsh's negligence when Marsh had admitted its negligence, and (7) whether the trial court erred by granting Hartford summary judgment on JP's breach of contract and declaratory judgment causes of action. The issue in appeal 02-1484 is whether the trial court abused its discretion in denying Marsh's motion to alter or amend the judgment or in the alternative for a judgment notwithstanding the verdict or new trial if the judgment entered on the jury's verdict of contribution due to Marsh was error as a matter of law.

## III. Hartford's Indemnity Claim

[1] Hartford contends that the trial court erred by not allowing it to proceed on its indemnity cross-claim. Hartford requested to proceed on this claim during pre-trial motions. The trial court denied the motion but allowed Hartford the option to argue indemnity defensively and have "an issue put to the jury to that effect." Marsh argues this issue was not preserved for appeal and asserts that Hartford made no objection to the trial court's failure to submit the issue to the jury.

The record shows that the trial court dismissed Hartford's claim of indemnity during pre-trial motions and reiterated its ruling later in the case.

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

MR. OWENS: . . . As I understand Hartford's positions, it contends presently that it has a crossclaim for indemnity against Marsh. I believe that claim is extinguished as a matter of law, Your Honor, simply because there is no pending contract claim against Hartford for—

THE COURT: I think I ruled on that before the trial began.

MR. OWENS: Well, I remember discussing it. I don't know whether it's been dismissed. . . .

THE COURT: I ruled at the beginning of the trial that that claim was extinguished.

MR. OWENS: Okay.

MR. FAISON: Well—

THE COURT: That was my ruling at the beginning. I've already ruled on that.

MR. FAISON: Well, I understand, Judge, but you ruled at the beginning of the trial they weren't going into—they weren't going to put on 2.8 million in damages and that they weren't going to get into the subsequent events, both of which they've done. And so, if I may just get you to revisit it just a moment. The indemnity claim is—

THE COURT: I already ruled on that matter.

MR. FAISON: Yes, sir.

THE COURT: All right, then.

This issue is more properly reviewed as a dismissal of the claim to which Hartford did not object, make an offer of proof, or request a jury instruction. Hartford did not make an objection of record to the trial court's dismissal of the "claim" during the pre-trial motions or during trial. We hold the error was not properly preserved and is not reviewable by our Court. *See State v. Farmer*, 138 N.C. App. 127, 132, 530 S.E.2d 584, 588, *disc. rev. denied*, 352 N.C. 358, 544 S.E.2d 550 (2000) ("[A] defendant waives his right to assign error to the omission of a jury instruction where he does not object to such omission before the jury retires to deliberate."). This assignment of error is overruled.

## IV.  Agency Issue

**[2]** Hartford assigns error to the trial court's submission of the issue of Marsh's agency with Hartford to the jury. Hartford contends that agency was not necessary to settle controversies arising in Marsh's claim of contribution, and that Marsh, as a negligent defendant, cannot maintain a contribution claim against Hartford, on a principal/agent relationship theory.

The trial court submitted four issues and instructed the jury that if they found Hartford to be negligent or Marsh to be the agent of Hartford, they would then determine the amount Hartford should contribute toward Marsh's settlement. Hartford contends that whether Marsh was an agent of Hartford was irrelevant to Marsh's claim of contribution because agency is not an element of negligence and JP's claims of derivative liability against Hartford were dismissed by Marsh.

We disagree. A determination of agency was properly submitted to establish Marsh's contribution claim. The Uniform Contribution Among Tort-feasors Act ("UCATA") creates a contribution right where "two or more persons become jointly or severally liable in tort for the same injury." N.C.G.S. § 1B-1(a) (2001). In *Yates v. New South Pizza, Ltd.*, 330 N.C. 790, 793-94, 412 S.E.2d 666, 669 (1992), our Supreme Court held that the UCATA expanded the definition of "tortfeasor" to include a vicariously liable master in the master-servant context. "Thus, the *release* of a servant did not release a vicariously liable master, unless the terms of the release provided for release of the master." *Wrenn v. Maria Parham Hosp., Inc.*, 135 N.C. App. 672, 679, 522 S.E.2d 789, 793 (1999), *disc. rev. denied, cert. denied*, 351 N.C. 372, 543 S.E.2d 149-50 (2000) (emphasis in original). Hartford urges this Court to not follow our Supreme Court's decision in *Yates* and contends that the decision was wrongly decided. We are bound by the rationale and holding of *Yates. Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (The Court of Appeals is bound by decisions of the Supreme Court).

Hartford also argues that the facts of *Yates* are distinguishable from those at bar. The *Yates* court allowed a plaintiff to recover from the master/employer after plaintiff settled with the servant/employee. The defendants in *Yates* shared a master-servant relationship; whereas Hartford and Marsh share a principal-agent relationship. The procedural context at bar is where one defendant seeks contribution

from another defendant, whereas in *Yates*, plaintiff asserted contribution against a co-defendant.

While the procedural context is different, we are bound by *Yates'* definition of a "tort-feasor" under the UCATA. Hartford's lack of direct negligence, as found by the jury, is immaterial. The jury found that Marsh acted as an agent of Hartford. The terms of the settlement between JP and Marsh did not extinguish or release the claims of JP against Hartford. Those claims were assigned to Marsh as a condition of and as consideration for the settlement. Marsh dismissed the remaining claims of negligence and breach of contract against Hartford through its relationship with Marsh, but retained its claim to contribution and JP's claim of breach of contract against Hartford.

Hartford contends that Marsh's dismissal of the claims against Hartford premised on vicarious liability prohibits Marsh from pursuing contribution. This assertion contradicts the UCATA which expressly requires that tort cross-claims against the other tort-feasor must be extinguished before contribution. "A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death has not been extinguished nor in respect to any amount paid in a settlement which is in excess of what was reasonable." N.C.G.S. § 1B-1 (d) (2001). By dismissing all of the claims relevant to tort liability, Marsh extinguished the claims required by the UCATA. Summary judgment extinguished the remaining contract and declaratory judgment claims before trial. This assignment of error is overruled.

## V.  Contribution Claim

[3] Hartford argues that Marsh failed to make a *prima facie* showing of a contribution claim under the UCATA because Hartford owed no duty to JP. Marsh contends that Hartford was independently liable to JP for breach of its common law duty to monitor the business of its insureds. No specific instruction was given to the jury regarding the law on such duty, but Marsh's contention was expressed. Marsh cross-appeals the trial court's failure to give such instruction. The jury found Hartford vicariously liable as principal for Marsh's negligence.

Hartford contends that the record is devoid of any agreement by Hartford to allow Marsh to act as its agent, and the trial court erred by submitting the issue of agency to the jury. The actions of an agent allow for an inference of agency. *See Powell v. Lumber Co.*, 168 N.C.

632, 636, 84 S.E. 1032, 1033 (1915). The record indicates that Marsh received commissions from Hartford and issued title binders and other documents on Hartford's behalf. These actions create, at minimum, apparent authority for Marsh to act as Hartford's agent and are sufficient evidence to withstand Hartford's motion for summary judgment or directed verdict. This assignment of error is overruled.

## VI. Entry of Judgment on Contribution Amount

[4] After the jury returned a verdict finding Marsh to be an agent of Hartford, and finding the settlement amount Marsh paid to JP to be reasonable, the jury awarded Marsh $150,000 in contribution from Hartford. Marsh contends that an award of contribution under the UCATA is statutory and that a joint tortfeasor must contribute its pro rata share of the liability, regardless of the relative degrees of fault. A pro rata share of the settlement amount of $1,450,000 would be $725,000. The trial court entered judgment upon a jury verdict award of $150,000. Marsh argues that the erroneous amount resulted from the trial court's inconsistent and incorrect re-instructions on the issues.

The jury was initially instructed that if they found the settlement amount Marsh paid to JP to be reasonable, Hartford's amount of contribution should be $725,000. Both parties agreed during oral arguments that this was an accurate statement of the law. The jury entered the amount Hartford should contribute to Marsh after it was re-instructed by the trial court.

The UCATA provides that where two or more persons become jointly and severally liable for the same injury, the injured party may recover his or her entire damages against any one of the joint tortfeasors, but any of the joint tortfeasors who pays more than his or her pro rata share of the damages has a right to contribution from the others for any amount paid in excess of the pro rata share. N.C.G.S. § 1B-1(b) (2001). The pro rata share is computed by dividing the total damage award by the number of jointly and severally liable tortfeasors, without considering a tortfeasor's relative degree of fault. *See* N.C.G.S. § 1B-2 (2001); David A. Logan and Wayne A. Logan, *North Carolina Torts*, § 8.20[7] (1996); Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts*, § 22.62 (1999). "The judgment of the court in determining the liability of the several defendants to the claimant for the same injury or wrongful death shall be binding as among such defendants in determining their right to contribution." N.C.G.S. § 1B-3(f) (2001).

JEFFERSON PILOT FIN. INS. CO. v. MARSH USA, INC.

[159 N.C. App. 43 (2003)]

The jury was re-instructed that after answering whether or not the JP-Marsh settlement was reasonable, they were to find whether or not Marsh was entitled to contribution from Hartford and the proper amount to be contributed. Marsh's trial counsel did not formally object to this re-instruction of the jury but invited the trial court to re-instruct again. The re-instructions gave the jury the latitude to determine the amount of the contribution award instead of mandating a pro rata share if the settlement amount was found reasonable.

The trial court erred in giving the incorrect re-instruction to the jury as a matter of law. Questions of law are reviewable *de novo*. *In re Greens of Pine Glen*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). We do not find Marsh's failure to more formally object to be fatal where the verdict returned after re-instruction is not allowed under applicable law. The trial court erred in entering judgment upon a verdict where the amount of contribution was mandated by the UCATA and not within the jury's discretion. This assignment of error is allowed.

## VII. Failure to Instruct on Negligence

[5] Marsh assigns error to the trial court's failure to instruct on the duty of an insurer to monitor the business of its insured. The trial court submitted the issue of Hartford's negligence to the jury, but did not instruct on any specific duty of an insurer. The jury found that Marsh was an agent of Hartford and Hartford was liable for JP's injury as a principal. We found no error in the trial and the jury's verdict in this respect. We do not address this assignment of error.

## VIII. Admission of Evidence of Marsh's Negligence

[6] Marsh argues that the trial court erred in allowing Hartford's trial counsel to question JP's representative about the failings of Marsh after Marsh had already admitted its negligence. While the relevancy of this evidence to the issues at trial may be questionable, it does not rise to the level of prejudicial error. Marsh has failed to show that but for this error, the jury's verdict would have changed. This assignment of error is overruled.

## IX. Denial of JP's Motion for Summary Judgment

[7] Marsh, as assignee of JP's claims, contends that the trial court erred in granting summary judgment for Hartford on JP's contract and declaratory judgment claims. We disagree.

Express language in the bond requires that if the insured merges with another entity, the insured

> shall not have such coverage as is afforded under this bond for loss which (a) has occurred in or will occur in offices or premises, or (b) has been caused or will be caused by an employee or employees of such institution, or (c) has arisen or will arise out of the assets or liabilities acquired by the Insured as a result of such consolidation . . . or acquisition of assets or liabilities unless the Insured shall

> (I) give the Underwriter written notice of the proposed consolidation, merger or purchase or acquisition of assets or liabilities prior to the proposed effective date of such action and

> (ii) obtain the written consent of the Underwriter to extend the coverage provided by this bond to such additional offices or premises, Employees and other exposures, or

> (iii) upon obtaining such consent, pay to the Underwriter an additional premium.

Marsh contends that the merger clause only applies to certain insuring agreements and does not apply to riders for general agents and soliciting agents. All specific riders amend and attach to the original fidelity bond and become incorporated into the original bond. The original bond required notice to be provided of the merger and consent to be given by Hartford in order to extend insurance coverage to the agents of the acquired entity. Neither requirement occurred before the merger was completed. This assignment of error is overruled.

## X. Conclusion

We are mindful of the anomalous result of these appeals. This result is mandated by the application of the plain language of the UCATA and the precedent set forth in *Yates*. We are concerned with a party being forced to make contribution to a settlement agreement where that party did not have a voice in the settlement amount.

Hartford has no direct liability to JP or, through its assignment, to Marsh. The jury found Hartford's liability to be solely derivative of Marsh's negligence. The amount of Hartford's contribution is set by precedent and statute. Summary judgment in favor of Hartford on the bond is affirmed. We find no error in the trial. The damage award is vacated and remanded to the trial court with instructions to enter

judgment for Marsh in the amount of $725,000 as is statutorily required by N.C.G.S. § 1B-1(b).

As we found error in the trial court's entry of judgment, Marsh's consolidated appeal from the denial of its motion to alter or amend the judgment or in the alternative, for a judgment notwithstanding the verdict, or a new trial is dismissed as moot. Both parties are to equally share the costs of the appeals and are solely responsible for any other costs or fees.

No error in trial; Judgment vacated and remanded with instructions.

Judges McGEE and CALABRIA concur.