STATE OF NORTH CAROLINA v. ANDRE JONES, SR.

No. COA07-969

(Filed 5 February 2008)

1. **Burglary and Unlawful Breaking or Entering— felonious breaking and entering—allegation of residence—building within curtilage—no fatal variance**

   The trial court did not err by failing to dismiss the charge of felonious breaking and entering under N.C.G.S. § 14-54(a) based on an alleged fatal variance between the indictment and the evidence where the indictment alleged defendant broke and entered into the residence when the facts tended to show that defendant broke and entered into a building outside the residence, because: (1) a variance is not material, and thus not fatal, if it does not involve an essential element of the crime charged; (2) the court has previously expounded the meaning of residence or dwelling house with regard to burglary to include buildings in the curtilage of the dwelling house, and the same logic is pertinent and persuasive for felonious breaking and entering; (3) the transcript revealed the indictment enabled the accused to prepare for trial; and (4) the occupancy of the pertinent building was not an essential element of the offense, and thus the word "residence" in the indictment was mere surplusage.

2. **Larceny— felonious larceny—motion to dismiss—sufficiency of evidence**

   The trial court did not err by failing to dismiss the charge of felonious larceny even though defendant contends the value of stolen goods was below $1,000 because: (1) contrary to defendant's assertion, the variance, if any, between the indictment and the evidence regarding the felonious breaking and entering of the garage was not material; and (2) N.C.G.S. § 14-72(b) states that the crime of larceny is a felony, without regard to the value of the property in question, if the larceny was committed pursuant to a felonious breaking and entering in violation of N.C.G.S. § 14-54 such as in this case.

3. **Evidence— exclusion of testimony—failure to show prejudice**

   Even assuming error in a felonious breaking and entering and felonious larceny case based on the trial court's exclusion of the

testimony of two witnesses who would allegedly have corrobo-rated defendant's alibi testimony that he was given and loaned the pertinent electric cords by the witnesses, defendant failed to show prejudice as required by N.C.G.S. § 15A-1443(a) when: (1) the evidence supporting defendant's conviction was strong and tended to show that the power cords were specifically identifi-able with specific notations of the victim's initials on them; and (2) it cannot be concluded that a different result would have been reached if this testimony had been admitted.

Appeal by Defendant from judgment entered 20 March 2007 by Judge Frank R. Brown in Wilson County Superior Court. Heard in the Court of Appeals 16 January 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Robert K. Smith, for the State.*

*Parish & Cooke, by James R. Parish for Defendant-Appellant.*

ARROWOOD, Judge.

Defendant appeals from judgment entered convicting him of felo-nious breaking and entering and felonious larceny. We find no error.

The evidence tends to show that Andrew Jones, Sr. (Defendant) lived near Lindsay Hardison (Hardison); their backyards were adja-cent. Hardison employed Defendant on several occasions to help him clear his yard and to paint. However, Hardison quickly discharged Defendant for his unreliability.

In January 2006, Hardison left his home to go to work, and at approximately 1:30 P.M., he returned to find his garage door opened. The garage, in which Hardison kept tools, paint and electrical cords, was an independent structure, fifteen feet from Hardison's home, and the garage did not have a lock; rather, the door was a metal "roll-up" door. When Hardison investigated the opened garage door, he discov-ered that his work bench had been cleared of the power tools and extension cords. Hardison called the police.

Two months later, Hardison saw an extension cord in Defendant's back yard draped over the fence and coiling to a neighbor's residence. Hardison again called the police, and the police obtained and em-ployed a search warrant, finding an orange power cord in Defendant's master bedroom, which Hardison identified as property stolen from his garage. Hardison stated at trial that he "put [his] initials on the

bottom corner of the tags so that [he] . . . [could] be sure [they were] the right ones." Hardison noticed that the cord in his neighbor's yard had a "tag with my initials on it."

At trial, Defendant and Sarah Jones (Jones), Defendant's wife, admitted that their electricity had been turned off because they failed to pay the electric bills, that the extension cords were borrowed, and that Defendant used the extension cords for electricity from their neighbor's home.

On 13 November 2006, Defendant was indicted on the charges of felonious breaking and entering and felonious larceny after breaking and entering. On 13 March 2007, the court entered judgment convicting Defendant of both charges. The convictions were consolidated and Defendant was sentenced to six to eight months in the Department of Correction.

### Sufficiency of Indictment

[1] In his first argument, Defendant contends that the trial court erred by failing to dismiss the charge of felonious breaking and entering because there was a fatal variance between the indictment and the evidence. We disagree.

A bill of indictment must contain the following:

A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

N.C. Gen. Stat. § 15A-924(a)(5) (2005). An indictment " 'is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense.' " *State v. Snyder*, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996) (quoting *State v. Coker*, 312 N.C. 432, 434-35, 323 S.E.2d 343, 346 (1984)). "[T]he primary purpose of the indictment is to enable the accused to prepare for trial." *State v. Farrar*, 361 N.C. 675, 678, 651 S.E.2d 865, 866 (2007) (internal quotation marks omitted).

"To support a conviction for felonious breaking and entering under [N.C. Gen. Stat.] § 14-54(a), there must exist substantial evi-

dence of each of the following elements: (1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein." *State v. Walton,* 90 N.C. App. 532, 533, 369 S.E.2d 101, 102 (1988) (citing *State v. White,* 84 N.C. App. 299, 352 S.E.2d 261 (1987)). N.C. Gen. Stat. § 14-54 (2005) specifically requires the following:

(a) Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon.

. . . .

(c) As used in this section, "building" shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property.

Occupancy of the "building" is not an element of the offense of felonious breaking and entering. *State v. Young,* 60 N.C. App. 705, 711, 299 S.E.2d 834, 838 (1983).

"In order for a variance [in an indictment] to warrant reversal, the variance must be material." *State v. Norman,* 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002) (citing *State v. McDowell,* 1 N.C. App. 361, 365, 161 S.E.2d 769, 771 (1968) (stating that "it is the settled rule that the evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense"). "A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged. *Norman,* 149 N.C. App. at 594, 562 S.E.2d at 457 (citing 41 Am. Jur. 2d *Indictments and Information* § 259).

In the instant case, the indictment for felonious breaking and entering states, in pertinent part, the following: "[t]he defendant . . . did break and enter a building occupied by Lindsay Hardison, used as a residence[.]" Defendant specifically argues that because the indictment alleges that Defendant broke and entered into a "residence," when the facts tend to show that Defendant broke and entered into a "building" outside the residence, there was a fatal variance between the indictment and the evidence. We find this argument unconvincing for the following reasons: (1) the Court has previously expounded the meaning of "residence" or "dwelling house" with regard to burglary to include buildings in the curtilage of the "dwelling house"; (2) the trial

transcript reveals that the indictment enabled the accused to prepare for trial; and (3) the occupancy of the "building" in question was not an essential element of the offense of felonious breaking and entering. For the foregoing reasons, the word "residence" in the indictment here was surplusage, and the variance between the indictment and the evidence, if any, was not material.

First, we examine the related law regarding the crime of burglary, in which the Court has expounded the meaning of "residence" or "dwelling house" to include buildings in the curtilage of the dwelling. "The curtilage is the land around a dwelling house upon which those outbuildings lie that are 'commonly used with the dwelling house.'" *State v. Fields*, 315 N.C. 191, 194, 337 S.E.2d 518, 520 (1985) (citing *State v. Twitty*, 2 N.C. 102 (1794)). Our Supreme Court has held that the definition of a "dwelling house" is not limited to the "house proper":

> The term "dwelling-house" includes within it not only the house in which the owner or renter and his family, or any member of it, may live and sleep, but all other houses appurtenant thereto, and used as part and parcel thereof, such as kitchen, smokehouse, and the like: provided they are within the curtilage, or are adjacent or very near to the dwelling-house. If the kitchen, smokehouse, or other house of that kind be placed at a great distance from the dwelling, and particularly if it stand outside of the curtilage or inclosed [sic] yard, it cannot be considered a part of the dwelling-house for the purpose of being protected against a burglary. The reason is that the law protects from unauthorized violence the dwelling-house and those which are appurtenant, because it is the place of the owner's repose; and if he choose to put his kitchen or smokehouse so far from his dwelling that his repose is not likely to be disturbed by the breaking into it at night, it is his own folly. In such cases the law will no more protect him than it will when he leaves his doors or windows open.

*State v. Green*, 305 N.C. 463, 472-73, 290 S.E.2d 625, 630 (1982) (citation omitted). "The question whether a building was part of the dwelling rested upon whether it served the 'comfort and convenience' of the dwelling." *Fields*, 315 N.C. at 194, 337 S.E.2d at 520. "[T]he visual and auditory proximity of outbuildings that serve the comfort and convenience of the homeowner is . . . a useful theoretical measure of whether those buildings lie within or beyond the curtilage." *Id.* at 195, 337 S.E.2d at 521.

Here, although the law pertaining to the definition of "dwelling house" in relation to the crime of burglary is not binding precedent to N.C. Gen. Stat. § 14-54 and the crime of felonious breaking and entering, we find the logic of the Court's interpretation of "dwelling house" pertinent and persuasive. Here, the evidence tended to show that the "building" was a small garage, fifteen feet from the home, serving the comfort and convenience of the homeowner, and within close visual and auditory proximity. The building was within the curtilage of the residence.

Second, the trial transcript reveals that the indictment enabled the accused to prepare for trial. *See State v. Miller*, 271 N.C. 646, 654, 157 S.E.2d 335, 342 (1967) (stating that "no fatal variance existed between the allegation and proof, it being apparent that all the witnesses were referring to the same corporation[,]" even though the name of the corporation in the indictment varied from the actual name of the corporation); *see also State v. Simpson*, 297 N.C. 399, 409, 255 S.E.2d 147, 153 (1979) (stating that "[t]he description of [a] house . . . was adequate to bring the indictment within the language of the statute" and the house was "identified with sufficient particularity to enable the defendant to prepare his defense[,]" even though the indictment contained an error in the street address). In the instant case, when asked "[d]id you ever have occasion while working with . . . Mr. Hardison to go into his garage or storage shed," Defendant stated, "I had no reason to ask him that." When asked, "[was] the garage open or shut while you [painted][,]" Defendant answered, "It was open." When asked whether he had ever been in the garage, Defendant replied, "[I've] never been in that garage, ever. . . . Not a single [time]." The transcript revealed that Defendant and the other witness who testified on Defendant's behalf showed no confusion as to whether the stolen items were stored in the house or the garage. The witnesses referred to the same garage, which housed the tools and cords—not to Hardison's residence—and the Defendant presented an ordered and prepared defense at trial.

Third, the occupancy of the "building" in question was not an essential element of the offense of felonious breaking and entering. *Young*, 60 N.C. App. at 711, 299 S.E.2d at 838. N.C. Gen. Stat. § 14-54(a) only requires that there must exist substantial evidence of each of the following elements: (1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein. "[B]uilding" is "construed to include any dwelling, dwelling house, uninhabited house, building under construction, building

within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property[.]" N.C. Gen. Stat. § 14-54(c) (2005). Therefore, the allegation in the indictment here that "[t]he defendant . . . did break and enter a building occupied by Lindsay Hardison, used as a residence . . . with the intent to commit a felony therein[,]" contained surplus language. The indictment would have been sufficient to state that "the defendant did break and enter a building with the intent to commit a felony therein." Because Hardison's occupation of the building was not an essential element of the crime of felonious breaking and entering, and because "[a] variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged[,]" *Norman*, 149 N.C. App. at 594, 562 S.E.2d at 457, we conclude that the variance here, if any, was not material. The language in the indictment in the case *sub judice* regarding the occupancy of the building by Hardison, and the building's use as a residence, was not essential to the crime of felonious breaking and entering.

We accordingly hold that the allegations in the indictment support the elements of the offense of felonious breaking and entering pursuant to N.C. Gen. Stat. § 14-54(a). This assignment of error is overruled.

## Sufficiency of Evidence

[2] In his second argument, Defendant contends that because the felony breaking and entering charge must be dismissed due to the fatal variance between the indictment and the evidence, the charge of felonious larceny must also be dismissed, because the value of the stolen goods was below $1,000. *See* N.C. Gen. Stat. § 14-72(a) (2005). We disagree. The variance, if any, between the indictment and the evidence regarding the felonious breaking and entering of the garage was not material, and therefore, Defendant's felonious larceny conviction pursuant to N.C. Gen. Stat. § 14-72(b)(2) (2005) was proper.

Pursuant to N.C. Gen. Stat. § 14-72(a), "[l]arceny of goods of the value of more than one thousand dollars ($ 1,000) is a Class H felony[,] . . . [and] where the value of the property or goods is not more than one thousand dollars ($ 1,000), [larceny of property] is a Class 1 misdemeanor." However, N.C. Gen. Stat. § 14-72(b), states that "[t]he crime of larceny is a felony, without regard to the value of the property in question, if the larceny is . . . [c]ommitted pursuant to a violation of G.S. . . . 14-54[.]" *See also State v. Brooks*, 178 N.C. App. 211, 215, 631 S.E.2d 54, 57 (2006).

We conclude that Defendant's felonious larceny conviction pursuant to N.C. Gen. Stat. § 14-72(b)(2) was proper as incident to Defendant's felonious breaking and entering pursuant to N.C. Gen. Stat. § 14-54. This assignment of error is overruled.

## Exclusion of Evidence

**[3]** In his third argument, Defendant contends that the trial court erred by excluding the testimony of two witnesses who would have corroborated Defendant's alibi testimony that he was given and loaned the electrical cords. We conclude that the exclusion of the testimony, even if error, was not prejudicial.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). "[E]ven though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991). "When relevant evidence not involving a right arising under the Constitution of the United States is erroneously excluded, a defendant has the burden of showing that the error was prejudicial." *State v. Weeks*, 322 N.C. 152, 163, 367 S.E.2d 895, 902 (1988). This burden may be met by showing that there is a reasonable possibility that a different result would have been reached had the error not been committed. N.C. Gen. Stat. § 15A-1443(a) (2005).

In the instant case, Defendant specifically argues that the trial court erred by excluding the testimony of James Ragland (Ragland) and Gail Taylor (Taylor), regarding their loan or gift to Defendant of the power cords and equipment. Specifically, Ragland testified on *voir dire* that Defendant borrowed power cords from him, and Taylor testified on *voir dire* that she gave Defendant equipment that she no longer needed, including a "lawn mower" and a "leaf blower."

We decline to address whether the trial court erred in excluding the testimony of Ragland and Taylor because even assuming *arguendo* that it was error for the trial court to exclude this testimony, we hold that Defendant has failed to show prejudice as required by N.C. Gen. Stat. § 15A-1443(a). The evidence supporting Defendant's conviction is strong, and tends to show that the power cords were specifically identifiable, with specific notations of

Hardison's initials on them. We cannot conclude that a different result would have been reached at trial had the trial court admitted the foregoing testimony. Thus, this assignment of error is overruled.

For the foregoing reasons, we conclude that Defendant received a fair trial, free from prejudicial error.

No Error.

Judges McCULLOUGH and ELMORE concur.